UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NEAL A. POWELL, | ) | CASE NO. 4:14CV2584 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| | ) | |
| UNITES STATES OF AMERICA, *et al.,* | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Defendants. | ) | |

This matter is before the undersigned on a motion for summary judgment filed by Plaintiff Neal A. Powell ("Plaintiff") on May 18, 2015, an amended motion for summary judgment filed by Plaintiff on July 10, 2015, and a motion to dismiss and/or motion for summary judgment filed by Defendants United States of America and Bureau of Prisons on October 9, 2015. ECF Dkt.#12; ECF Dkt. #28; ECF Dkt. #43. Defendants filed a response to Plaintiff's motion for summary judgment on October 9, 2015. ECF Dkt. #44. Plaintiff filed a reply on October 23, 2015. ECF Dkt. #51. Plaintiff filed a response to Defendants' motion to dismiss and/or motion for summary judgment on October 26, 2015. ECF Dkt. #52. Defendants did not file a reply.

For the following reasons the undersigned recommends that the Court DENY both of Plaintiff's motions for summary judgment, DENY Defendants' motion dismiss and/or motion for summary judgment insofar as it pertains to summary judgment, and GRANT Defendants' motion to dismiss and/or motion for summary judgment insofar as it pertains to dismissal of the instant case without prejudice.

**I.     FACTUAL AND PROCEDURAL HISTORY**

Plaintiff was incarcerated at the Elkton Federal Correctional Institute in Elkton, Ohio ("FCI Elkton") from December 4, 2012 through March 3, 2014. ECF Dkt. #43-1 at 2. Upon arrival at FCI Elkton, Plaintiff met with the chief psychologist, Dr. Paul Clifford, and completed a written

psychological assessment. *Id.* Plaintiff then met with Dr. Jessica Virzi and two other members of the psychological staff, and subsequently participated in a Suicide Risk Management Program for several months that consisted of weekly visits from the psychological staff. ECF Dkt. #41-1 at 12. Plaintiff also utilized FCI Elkton's meditation room and meditation videos, as well as the suicide watch program offered by FCI Elkton. *Id.* at 14. While at FCI Elkton, Plaintiff was prescribed Prozac, but stopped taking the medication because he did not believe that it was helping his mental condition. *Id.* at 23-24.

While at FCI Elkton, Plaintiff attempted suicide on November 18, 2013, November 29, 2013, and December 16, 2013. ECF Dkt. #43-1 at 3. During Plaintiff's first suicide attempt, FCI Elkton officials witnessed Plaintiff consume an overdose of allergy medication. *Id.* After witnessing the suicide attempt, R.N. C. McConnell called poison control and arranged for Plaintiff to be taken to a hospital, as directed by poison control officials. *Id.* Paramedics arrived at the prison, administered fluids to flush the drugs from Plaintiff's system, and took Plaintiff to a hospital where he remained for two to three days. *Id.* During his second suicide attempt, Plaintiff ingested his cellmate's allergy medication. *Id.* Paramedics were called and Plaintiff was again taken to the hospital. *Id.*

During Plaintiff's third suicide attempt, Dr. Virzi witnessed Plaintiff swallow, or pretend to swallow, an unknown substance.[1] ECF Dkt. #43-1 at 3. Following the suicide attempt, Plaintiff was placed in a holding cell by Lt. Hoover. *Id.* Lt. Hoover asked Dr. Virzi to remain with Plaintiff, and left to notify medical staff. *Id.* Lt. Hoover returned with members of the medical staff, and Plaintiff's knee and ear were examined. ECF Dkt. #41-1 at 21. FCI Elkton's medical staff determined that Plaintiff could be treated at the prison, and Plaintiff was not transported to a hospital. *Id.*

On November 24, 2014, Plaintiff filed the instant case under 28 U.S.C. § 1346, alleging that employees of the United States of America were negligent and that their negligence resulted in injury

---

[1] Plaintiff claims that he ingested a toxic amount of allergy medication. Defendants maintains that Plaintiff consumed non-toxic hand sanitizer. These factual inconsistencies will be discussed at greater length below.

to Plaintiff. ECF Dkt. #1 at 3. Plaintiff amended his complaint twice, with the first amendment adding Bureau of Prisons as a defendant, and the second amendment modifying the date of the events leading to the instant case. ECF Dkt. #3; ECF Dkt. #7. Plaintiff filed a motion for summary judgment on May 18, 2015. ECF Dkt. #12. On July 10, 2015, Plaintiff filed a third amended complaint asserting that he was bringing this suit pursuant to both 28 U.S.C. § 1346 and 28 U.S.C. § 2674. ECF Dkt. #27. Following the third amendment, Plaintiff filed an amended motion for summary judgment on July 10, 2015.[2] ECF Dkt. #28. Defendants filed a motion to dismiss and/or motion for summary on October 9, 2015.

## II. STANDARD OF REVIEW

### A. SUMMARY JUDGMENT

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Upon filing a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the nonmoving party's claim. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (internal citation omitted); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n. 12 (6th Cir. 1989). The moving party is not required to file affidavits or other similar materials negating a claim on

---

[2]For the purpose of this Report and Recommendation, Plaintiff's amended motion for summary judgment (ECF Dkt. #28) is hereafter referred to simply as Plaintiff's motion for summary judgment.

which its opponent bears the burden of proof, so long as the moving party relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In response, if the moving party establishes the absence of a genuine issue of material fact, in order to defeat summary judgment, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (internal citation omitted). In this regard, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," but rather, "Rule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379–80 (6th Cir. 2007) (internal citation omitted); *see also Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008) (internal citation omitted). Moreover, the non-moving party must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–587; see also *Barr v. Lafon*, 538 F.3d 554, 574 (6th Cir. 2008).

Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor of the non-moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87; *see also Anderson*, 477 U.S. at 252.

### B. DISMISSAL

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a Court must dismiss a complaint for "failure to state a claim upon which relief can be granted." In order to avoid dismissal for failure to state a claim for relief, the plaintiff's complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). However,

the complaint must give the defendant notice of the claim and the basis for the claim. *Erickson v. Pardus*, 511 U.S. 81 (2007).

In reviewing a Rule 12(b)(6) motion, the Court must accept all factual allegation in the complaint as true and must construe inferences in a light most favorable to the plaintiff. *Erickson*, 511 U.S. 81, 93-94 (citing *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must "determine whether the plaintiff can prove a set of facts in support of his claims that would entitle him to relief." *Daubenmire v. City of Columbus*, 507 F.3d 383, 387-88 (6th Cir. 2007) (quoting *Bovee v. Coopers & Lybrand C.P.A.,* 272 F.3d 356, 360 (6th Cir. 2001)). In order to survive dismissal under Rule 12(b)(6), a plaintiff's complaint "must contain either direct or inferential allegations which compromise all of the essential elements necessary to sustain a claim for relief under some viable legal theory." *Cox v. True North Energy, LLC.,* 524 F.Supp.2d 927, 933-34 (N.D. Ohio Nov. 20, 2007).

**III.     LAW AND ANALYSIS**

Plaintiff and Defendants have filed motions for summary judgment. Both Plaintiff and Defendants have chosen to use their responses and replies to argue the merits of the case a whole, rather than solely argue against the position their opponent takes on summary judgment, and Defendants have used their motion to dismiss and/or motion for summary judgment to respond to Plaintiff's motion for summary judgment. As such, the undersigned will discuss Plaintiff's motion for summary judgment and the responsive pleadings, followed by Defendants' motion to dismiss and/or motion for summary judgment and the responsive pleadings in the context of summary judgment, and then provide an analysis of both motions regarding summary judgment. Following that analysis, the undersigned will address Defendants' request that this case be dismissed.

**A.     Plaintiff's Motion for Summary Judgment**

Plaintiff's motion for summary judgment consists of fifteen brief numbered sentences, followed by a memorandum of law containing brief discussions of Defendants' liability and exhibits, Plaintiff's injury, the summary judgment standard, and an argument as to why *res ipsa loquitur* applies in this case. ECF Dkt. #28; ECF Dkt. #28-10. Plaintiff first asserts that his administrative

tort claim was denied because nurse records stated that Plaintiff swallowed non-toxic hand sanitizer, and argues that this error did not relieve R.N. McConnell of the duties bestowed upon him by prison policy. ECF Dkt. #28 at 1. It is unclear what Plaintiff intends to claim in this assertion as it does not appear from the record that R.N. McConnell relied on any nursing records when treating Plaintiff. Rather, it appears that R.N. McConnell treated Plaintiff and then prepared a report indicating that Plaintiff had stated that he had consumed non-toxic hand sanitizer. ECF Dkt. #41-2. The only other mention of hand sanitizer in reports prepared by FCI Elkton staff is contained in what appears to be a timeline of events prepared by Jane Barnes, however, the document itself is not labeled and it is unclear why the document was included in the exhibits filed by Defendants. *See* ECF Dkt. #41-2 at 23.

Plaintiff also argues that contributory negligence does not apply in this case because FCI Elkton staff were aware of his mental ailments prior to the December 16, 2013 suicide attempt. ECF Dkt. #28 at 1. Next, Plaintiff asserts that R.N. McConnell was alerted by Plaintiff of prior suicide attempts, and that R.N. McConnell chose to ignore Plaintiff's statements that he had ingested allergy pills in a suicide attempt. *Id.* Plaintiff also claims that R.N. McConnell knew that he should have contacted an ambulance based on the November 8, 2013 suicide attempt, and that R.N. McConnell failed to do so after the December 16, 2013 suicide attempt. *Id.* Plaintiff continues, asserting that the denial of treatment allowed the chemicals Plaintiff ingested to cause harm to his organs and severely increased the risk of future harm. *Id.* at 2. In addition, Plaintiff maintains that his claim is not a medical malpractice claim. *Id.* Plaintiff also asserts that the doctrine of *res ipsa loquitor* applies in this case. *Id.*

Defendants argue that Plaintiff is making a medical malpractice claim because he is challenging the quality of the mental health care he received while incarcerated at FCI Elkton. ECF Dkt. #44 at 1. Although Defendants make this argument in their response to Plaintiff's motion for summary judgment, this argument is more applicable to the assertions made in Defendants' motion to dismiss and/or motion for summary judgment in the context of dismissal. Further, Defendants contend that Plaintiff cannot obtain relief on this claim because the sentencing judge's

recommendation was followed. *Id.* at 2. Plaintiff maintained that his claim involved a breach of duty and is not a medical malpractice claim. ECF Dkt. #51.

### B. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants argue that FCI Elkton staff did take Plaintiff's December 16, 2013 suicide attempt seriously, and that Plaintiff's testimony contradicts his arguments. ECF Dkt. #43-1 at 10. To illustrate this point, Defendants point to Plaintiff's testimony stating that in response to his December 16, 2013 suicide attempt, Lt. Hoover ran to get medical help while Dr. Virzi stayed with Plaintiff and continued to talk with him. *Id.* Defendants assert that Plaintiff admitted that he had not overdosed on allergy medication, but instead had consumed non-toxic hand sanitizer. *Id.* Defendants maintain that Plaintiff is unable to avoid summary judgment by contradicting his deposition testimony, which indicates that FCI Elkton staff took Plaintiff's suicide attempt seriously. *Id.* Defendants continue, arguing that merely challenging whether one member of the medical team (Defendants are presumably referring to R.N. McConnell) believed that Plaintiff attempted suicide was not serious does not change the fact that FCI Elkton staff took the suicide attempt seriously and provided immediate medical care. *Id.*

Next, Defendants address the remaining claims contained in Plaintiff's third amended complaint. In his third amended complaint, Plaintiff alleges that Defendants violated the sentencing judge's orders by failing to place him in a facility where he could obtain proper mental health care. ECF Dkt. #27 at 3. Defendants argues that the sentencing judge did not specify what treatment Plaintiff was to receive or where Plaintiff was to be incarcerated. ECF Dkt. #43-1 at 11. Continuing, Defendants state that courts have no authority to designate an inmate to a particular correctional institution because that determination is within the sole discretion of the Bureau of Prisons. *Id.* (citing *Olim v. Wakinekon*, 461 U.S. 238, 245-46 (1983)). Defendants also argue that the sentencing judge's orders were met because, based on Plaintiff's deposition testimony, Plaintiff received treatment from the chief psychologist and a staff psychologist, participated in suicide prevention programs, and received medication for his mental ailments. ECF Dkt. #43-1 at 11. In addition, Defendants note that Plaintiff was transported to a hospital after his first and second suicide attempts,

and obtained extensive follow-up treatment and care at FCI Elkton to address his mental health needs. *Id.* at 11-12.

Defendants next address Plaintiff's claim that Bureau of Prisons officials improperly supervised Dr. Virzi. ECF Dkt. #43-1 at 12. Defendants support their position by indicating that Plaintiff is unable to demonstrate that Dr. Virzi breached a standard of care and committed medical malpractice because Plaintiff concedes that officials at FCI Elkton provided him with appropriate medical care. *Id.* Further, Defendants assert that Plaintiff is unable to demonstrate that R.N. McConnell did not take his third suicide attempt seriously because FCI staff did, in fact, take Plaintiff's third suicide attempt seriously, as discussed above.

For similar reasons, Defendants contend that Plaintiff's claim that Defendants failed to treat his toxic overdose also lacks merit. ECF Dkt. #43-1 at 12. Defendants argue that during Plaintiff's first and second suicide attempts, FCI Elkton staff called paramedics and took Plaintiff to a hospital. *Id.* Continuing, Defendants reassert that treatment was provided to Plaintiff following his third suicide attempt and Plaintiff has no expert testimony indicating that the treatment was substandard. *Id.* at 12-13.

Defendants also argue that Plaintiff's deposition testimony contradicts his claim that Lt. Hoover failed to notify medical staff of Plaintiff's toxic overdose. ECF Dkt. #43-1 at 13. Defendants contend that, according to Plaintiff's testimony, Lt. Hoover left to alert medical personnel of Plaintiff's suicide attempt, and medical personnel determined Plaintiff's vital signs were normal. *Id.* In addition, Defendants claim that there was no evidence to support Plaintiff's claims that he took an overdose of any medication, and that Plaintiff admitted that he had only swallowed a small amount of hand sanitizer. *Id.*

Finally, Defendants argue that Plaintiff is unable to establish proximate cause because of his comparative and/or contributory negligence. ECF Dkt. #43-1 at 13. In support of this position, Defendants assert that Plaintiff cannot recover for the alleged damages resulting from the December 16, 2013 suicide attempt because suicide is generally deemed to be an intervening cause that prevents the proximate-cause element of a malpractice claim from being established. *Id.* Defendants also argue that Plaintiff is unable to establish that he suffered any damages because Plaintiff's vital signs

-8-

were normal immediately following the December 16, 2013 suicide attempt. *Id.* at 14. Finally, Defendants assert that even if Plaintiff suffered any damages, his claim is barred because he is more than fifty percent responsible for his damages due to his refusal of psychiatric medication offered by ECF Elkton medical officials. *Id.*

Plaintiff responded by arguing that Defendants are mistaken in believing that Plaintiff is seeking relief due to inadequate medical care, and that Plaintiff is only seeking relief resulting from R.N. McConnell's breach of duty that occurred when R.N. McConnell failed to take Plaintiff's December 16, 2013 suicide attempt seriously. ECF Dkt. #52. Defendants did not file a reply.

### C.     SUMMARY JUDGMENT ANALYSIS

Neither Plaintiff nor Defendants are entitled to summary judgment because neither party has shown that there is no genuine dispute as to any material fact as required by Fed. R. Civ. P. 56(a). Plaintiff alleges that an employee of Defendants breached a duty owed to Plaintiff and was negligent in handling Plaintiff's December 16, 2013 suicide attempt, during which Plaintiff ingested a harmful amount of allergy medication and suffered when FCI medical staff did not respond appropriately. Defendants argue that Plaintiff's claim that R.N. McConnell failed to take Plaintiff's December 16, 2013 suicide attempt seriously should be rejected because other members of FCI Elkton's medical staff responded diligently to Plaintiff's medical needs, and because Plaintiff "allegedly" admitted that he did not overdose on allergy medication and, instead, consumed a small amount of non-toxic hand sanitizer. ECF Dkt. #43-1 at 3.

Plaintiff has, on numerous occasions, maintained that he consumed a toxic dose of allergy medication during his December 16, 2013 suicide attempt. Plaintiff alleges that he ingested allergy medication in his complaint and throughout the amended complaints. ECF Dkt. #1, #3, #7, #27. During his deposition testimony, Plaintiff is twice asked whether he ingested hand sanitizer rather than allergy medication, and in both responses Plaintiff indicates that he consumed allergy medication, not hand sanitizer. ECF Dkt. #41-1 at 16, 28. Additionally, the December 16, 2013 and December 18, 2013 reports prepared by Dr. Virzi make no mention of hand sanitizer, and instead indicate that Plaintiff allegedly ingested allergy tablets with the goal of self harm. ECF Dkt. #41-2 at 12, 20. The only potentially reliable indication on the record that Plaintiff ingested hand sanitizer

is the Bureau of Prisons Clinical Encounter Report filed by R.N. McConnell on December 16, 2013. ECF Dkt. #41-2 at 16. R.N. McConnell's report also indicates that Plaintiff stated that he had taken "a whole bottle of pills earlier." *Id.* Plaintiff has maintained that he overdosed on allergy medication throughout the entirety of this case.

Defendants contend that Plaintiff admitted to consuming hand sanitizer rather than allergy medication, but Defendants' citations do not establish that Plaintiff has made this admission. Defendants only cites to Plaintiff's deposition testimony during which Plaintiff was broadly asked whether he had a chance to review his medical records, the Bureau of Prisons Clinical Encounter Report claiming that Plaintiff had admitted to ingesting hand sanitizer (which also quotes Plaintiff as stating that he ingested pills), and the report prepared by Defendants' expert witness. ECF Dkt. #43-1 at 3 (citing ECF Dkt. #41-1 at 27, 28; ECF Dkt. #41-2 at 13, 16; ECF Dkt. #42-1).[3] The citation to the report prepared by Defendants' expert witness does not further Defendants' claim because the citation is cyclical in that the expert's report relies on substantially the same portion of the record as Defendants' claim that Plaintiff admitted to ingesting hand sanitizer rather than allergy medication.[4] ECF Dkt. #42-1 at 2. There is mention of Plaintiff ingesting non-toxic hand sanitizer

---

[3] Although Defendants cite to page 107 of Plaintiff's deposition (ECF Dkt. #41-1 at 28) to support the proposition that Plaintiff admitted to ingesting hand sanitizer, the deposition testimony provided at that page discusses Plaintiff's desire to terminate the deposition and Plaintiff's comments that he was filing complaints for revenge, to which Plaintiff refused to comment. This does not directly support the position that Plaintiff ingested hand sanitizer rather that allergy medication, and, although it may speak to the legitimacy of Plaintiff's claims, at the summary judgment stage the record must be viewed in the light most favorable to the non-moving party. Additionally, the citation to Dr. Virzi's December 18, 2013 report (ECF Dkt. #41-2 at 12-13) does not indicate that Plaintiff admitted to ingesting hand sanitizer, but rather discusses Plaintiff 's comments regarding filing complaints for revenge against FCI Elkton staff. While there is evidence in the record that supports the conclusion that Plaintiff's claims are retaliatory in nature, whether the claims are retaliatory is a question of fact, and thus would be properly determined by a jury.

[4] Defendants' expert witness relies on "Bureau of Prisons Clinical Encounter Reports dated November 16, 2013 and November 18, 2013." The November 16, 2013 Bureau of Prisons Clinical Encounter report is the same report in which R.N. McConnell states that Plaintiff admitted to ingesting hand sanitizer. Defendants' expert witness disclosed the records reviewed, and in those records there are only two mentions of hand sanitizer. One mention is R.N. McConnell's December 16, 2015 Bureau of Prisons Clinical Encounter Report, and the other is the administrative decision by Michael D. Tafelski, which appears to rely on R.N. McConnell's December 16, 2015 Bureau of Prisons Clinical Encounter Report. *See* ECF Dkt. #28-9 at 2.

on a document dated February 18, 2014, prepared by Jane Barnes, however, the nature of this document is unclear, as are the author's sources for the information contained in the document. It appears likely that the mention of hand sanitizer in this document was lifted directly from R.N. McConnell's December 16, 2013 Bureau of Prisons Clinical Encounter Report. ECF Dkt. #41-2 at 23.

Whether Plaintiff consumed allergy medication, hand sanitizer, or nothing at all is an issue of material fact because it determines what actions FCI Elkton staff should have taken in response to Plaintiff's December 16, 2013 suicide attempt. On two occasions prior to Plaintiff's December 16, 2013 suicide attempt, Plaintiff had ingested an overdose of allergy medication, was provided medical services, and was transported to a hospital outside of FCI Elkton, as recommended by poison control officials. Plaintiff now claims that he ingested a similar overdose of allergy medication, was not transported to a hospital, and suffered immediate and permanent harm from the failure of FCI Elkton officials to take his suicide attempt seriously and to transport Plaintiff to a medical facility where he could be properly treated. Defendants do not agree that Plaintiff consumed an overdose of allergy medication and instead maintains, on several occasions, that Plaintiff actually ingested non-toxic hand sanitizer that was not harmful to Plaintiff. ECF Dkt. #43-1 at 10, 13.[5] FCI Elkton officials may have breached a duty owed to Plaintiff by failing to offer Plaintiff appropriate medical care and transport Plaintiff to a hospital if Plaintiff had ingested a toxic level of allergy medication. Likewise, FCI Elkton officials may not have breached a duty owed to Plaintiff in determining that he could be treated at the prison if Plaintiff only consumed non-toxic hand sanitizer or did not consumer anything at all. Since Plaintiff and Defendants do not agree on the factual circumstances surrounding the December 16, 2013 suicide attempt, and these factual circumstances are material to the instant case, neither party is entitled to summary judgment.

---

[5]Defendants assert that Plaintiff swallowed a small amount of hand sanitizer twice on page thirteen of the motion for summary judgment and/or motion to dismiss. ECF Dkt. #43-1 at 13.

-11-

**D.     DISMISSAL ANALYSIS**

Defendants assert that Plaintiff has filed a medical malpractice claim, and thus is required to file an affidavit of merit provided by an expert witness pursuant to Ohio Rule of Civil Procedure 10(D)(2). ECF Dkt. #43-1 at 7. Plaintiff maintains that he has not filed a medical malpractice claim because he is only seeking relief for R.N. McConnell's breach of duty. ECF Dkt. #52 at 1.

Plaintiff has filed suit under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. §§ 2671, 2679(b)(1). "The FTCA grants a limited waiver of sovereign immunity and allows torts claims against the United States 'in the same manner and to the same extent as a private individual under like circumstances.'" *Chomic v. United States*, 377 F.3d 607, 609 (6th Cir. 2004) (quoting 28 U.S.C. § 2674). The FTCA "waives sovereign immunity to the extent that state-law would impose liability on a private individual in similar circumstances." *Chomic*, 377 F.3d at 9 (citing *Young v. United States*, 71 F.3d 1238, 1241 (6th Cir. 1995)). Generally, liability on the part of the federal government under the FTCA is determined in accordance with the law of the state where the event giving birth to the liability occurred. *Young*, 71 F.3d at 1242.

Ohio Rule of Civil Procedure 10(D)(2)(a) reads:

(2) Affidavit of merit; medical liability claim.

> (a) Except as provided in division (D)(2)(b) of this rule, a complaint that contains a medical claim, dental claim, optometric claim, or chiropractic claim, as defined in section 2305.113 of the Revised Code, shall include one or more affidavits of merit relative to each defendant named in the complaint for whom expert testimony is necessary to establish liability. Affidavits of merit shall be provided by an expert witness pursuant to Rule (D) and 702 of Evidence. Affidavits of merit shall include all of the following:
>
> > (i) A statement that the affiant has reviewed all medical records reasonably available to the plaintiff concerning the allegations contained in the complaint;
> >
> > (ii) A statement that the affiant is familiar with the applicable standard of care;
> >
> > (iii) The opinion of the affiant that the standard of care was breached by one or more of the defendants to the action and that the breach caused injury to the plaintiff.

According to the substantive law of Ohio, if Plaintiff's claims are medical liability claims, Plaintiff was required to file one or more affidavits of merit with his complaint. Ohio R. Civ. P. 10(D)(2)(a).

Ohio courts have recognized that the requirements of Ohio R. Civ. P. 10(D)(2) apply in prison inmate medical claims. *Foster v. Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-503, 2013 WL 988056 (March 12, 2013); *Franks v. Ohio Dept. of Rehab. & Corr.*, 195 Ohio App.3d 114, 2011-Ohio-2048, 958 N.E.2d 1253 (10th Dist.). *Foster* held that a claim asserted against any physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice nurse, physical therapist, physician's assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person is a medical claim. *Foster* at ¶7 (citing *Fletcher v. Univ. Hosps. of Cleveland*, 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, ¶5). In *Foster,* the court held:

> [W]here a medical examination is conducted as a precondition for obtaining a benefit, or information concerning a person's eligibility for a benefit, that examination is distinguishable from one concerning the diagnosis, care, or treatment of a person, as requisite to a medical claim.

*Foster* at ¶32. Essentially, an affidavit of merit is required by Ohio R. Civ. P. 10(D)(2) if: (1) the claim is against one of the medical professional or facilities listed; and (2) the claim arises out of a medical diagnosis, medical care, or medical treatment. *Wick v. Lorain Manor Inc., et al.,* 9th Dist. Lorain No. 12CA010324, 2014-Ohio-4329.

Plaintiff's third amended complaint states:

> Dr. Clifford failed to allow me mental health programming and failed to supervise Dr. Virzi Lt. Hoover failed to alert medical of my toxic overdose. R.N. McConnell failed to obey prison policies by not taking the knowledge of my attempted suicide seriously whe he were aware that this medicine could cause such harms if untreated. I suffered intense pains in the chest and shoulder the day following, and Im syffering a increased risk of future harm to heart, liver, kidneys, and from not having the poison flushed before it had opportunity to take effect. I'm suffering fatigue and anxiety attacks. This is not a medical malpractice claim. [sic]

ECF Dkt. #27 at 5. Plaintiff's motion for summary judgment makes specific accusations against R.N. McConnell, as well as general allegations that denial of treatment caused harm to Plaintiff. ECF Dkt. 28. In his motion for summary judgment, Plaintiff again states that he is not making a medical malpractice claim.

Plaintiff has made a claim against a prison facility that satisfies the first prong of the test to determine whether an affidavit of merit is required because the law of Ohio recognizes prisons as

medical facilities. Plaintiff has made a claim against Bureau of Prisons. This Court has recognized that inmates in federal corrections facilities are still required to comply with state substantive law requiring plaintiff to file some type of certification of merit to a medical malpractice claim to avoid dismissal. *Klinger v. Corr. Corp. of America, Inc.*, No. 4:11CV2299, 2013 WL 143535 (N.D. Ohio Jan. 11, 2013) (dismissing a medical malpractice claim filed by a plaintiff in federal custody in North Carolina for failure to include a certification of merit). Ohio courts have recognized that the requirements of Ohio R. Civ. P. 10(D)(2) apply in prison inmate medical claims. *Foster.* Plaintiff has failed to demonstrate how his claim, as asserted against Bureau of Prisons, is not a claim made against a medical facility that satisfies the first prong of the test to determine whether an affidavit of merit is required.

The second prong of the test to determine whether an affidavit of merit is required looks to whether the claim arises out of a medical diagnosis, medical care, or medical treatment. *Wick.* Plaintiff's claim is, according to Plaintiff, alleging that R.N. McConnell's failure to take his suicide attempt seriously caused harm to Plaintiff's organs and increased the risk of future harm to Plaintiff. ECF Dkt. #28 at 2. Plaintiff is not alleging that he was seeking an examination to obtain a benefit, or to assess his eligibility to obtain a benefit, as was the concern in *Foster. Foster* at ¶32. Rather, Plaintiff was attempting to obtain care and treatment for his alleged overdose. *See Id.* The fact that Plaintiff was seeking care and treatment for his alleged overdose is evidenced by Plaintiff's indication that "[d]enial of treatment of any sort allowed chemicals to cause harm to [Plaintiff's] organs and severely increased the risk of future harm without providing any flushing treatment to dull and eliminate the effects of the drug as [was] done on [November 8, 2013]." ECF Dkt. #28 at 2. Plaintiff's admissions in his motion for summary judgment clearly indicate that Plaintiff has satisfied the second prong of the test to determine whether Plaintiff was required to file an affidavit of merit in the instant case.

Finally, Plaintiff's arguments that *res ipsa loquitor* apply in the instant case are without merit. *Res ipsa loquitor* is not a substantive rule of law, rather it is an evidentiary rule which permits, but does not require, the jury to draw an inference of negligence when the logical premises for the inference are demonstrative. *Morgan v. Children's Hosp.*, 18 Ohio St.3d 185, 187, 480 N.E.2d 464

-14-

(1985). Plaintiff is not before a jury, and *res ipsa loquitor* is not a proper argument to present in an attempt to survive a motion for summary judgment or motion to dismiss.

Plaintiff's claim is a medical malpractice claim, and Plaintiff has failed to file an affidavit of merit as required by Ohio R. Civ. P. 10(D)(2). Ohio R. Civ. P. 10(D)(2)(d) indicates that any dismissal for failure to comply with Ohio R. Civ. P. 10(D) shall operate as a failure otherwise than on the merits. For the above reasons, the undersigned recommends that the Court grant Defendants' motion to dismiss and/or motion for summary judgment, insofar as it pertain to the dismissal the instant case without prejudice.

## IV. CONCLUSION

For the foregoing reasons the undersigned recommends that the Court DENY Plaintiff's motions for summary judgment (ECF Dkt. #12; ECF Dkt. #28), DENY Defendants' motion to dismiss and/or motion for summary judgment insofar as it pertains to summary judgment on the merits (ECF Dkt. #43), and GRANT Defendants' motion to dismiss and/or motion for summary judgment (ECF Dkt. #43) insofar as it pertains to dismissal of the instant case otherwise than on the merits without prejudice.

Date: December 4, 2015     */s/ George J. Limbert*
                            GEORGE J. LIMBERT
                            UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).